O'SULLIVAN RUBBER COMPANY, INC. (IN DISSOLUTION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97399.   Promulgated September 24, 1940.

*Edward I. Devlin, Jr., Esq.,* and *Peter V. D. Voorhees, Esq.,* for the petitioner.

*Conway N. Kitchen, Esq.,* for the respondent.

722

OPINION.

MURDOCK: The debtor which owed the petitioner the $3,400 "was chronically suffering from financial embarrassment" and the "petitioner was in imminent danger, not only of not collecting the interest" but of losing the principal payments due it. Cf. *Turners Falls Power & Electric Co.*, 15 B. T. A. 983, 992. The petitioner had no reasonable anticipation at the close of 1935 of receiving the interest when it became due. Since collection was so doubtful, it did not have to accrue the item of $3,400. Cf. *Great Northern Railway Co.*, 8 B. T. A. 225, 269; appeal dismissed, 40 Fed. (2d) 372; certiorari denied, 282 U. S. 855; *Corn Exchange Bank* v. *United States*, 37 Fed. (2d) 34; *American Central Utilities Co.*, 36 B. T. A. 688.

The evidence does not show that at the close of 1935 there was any uncertainty about the collection of the interest on the Boston & New York Airline Railway bonds. The petitioner actually accrued the interest in the amount of $416.67. The mere fact of nonpayment is insufficient to show that it was not properly accrued. The reason given by a revenue agent for disallowing a loss for 1936 on that item is likewise insufficient to show that the accrual was improper for 1935. He may have been in error in denying the deduction for 1936.

The petitioner quotes the legislative history of section 351 of the Revenue Act of 1934 to show that the purpose of Congress was not to penalize such a taxpayer as this one, which was not tainted with the faintest trace of the evil at which Congress aimed and which could not make a distribution taxable to its shareholders as an ordinary dividend. However, the only means of escape from the plain language of section 351 suggested by the petitioner is that it is not a corporation within the meaning of that word as used in section 351 of Title IA. It is inconsistent in not making the same contention in connection with its income tax liability, under Title I, since section 351 (b) (4) of Title IA provides that "the terms used in this section shall have the same meaning as when used in Title I." The stockholding and income for the year bring it squarely within the definition of a personal holding company, if it is a corporation. See sec. 351 (b) (1).

The term "corporation" when used in the act, includes associations. Sec. 801 (a) (2). The Commissioner has provided in article 801–2 of Regulations 86 that a corporation becomes an association if it continues to conduct its affairs after the expiration of its charter or after the termination of its existence. The petitioner argues that there can be no association taxable as a corporation within the statute and the regulations where, as here, the dissolved corporation is carrying on no business but is merely winding up its affairs and liquidating. It attempts to find some analogy between itself and a liquidating trust. Cf. *Morrissey* v. *Commissioner*, 296 U. S. 344; *Broadway-Brompton Buildings Liquidation Trust*, 34 B. T. A. 1089; *Fidelity National Bank & Trust Co.*, 37 B. T. A. 473. We do not think, however, that either the regulation or the term "association" is necessary to bring this taxpayer within the term "corporation." This was not a trust but an actual corporation. The law of New York provides that after dissolution "Such corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs, and may sue and be sued in its corporate name." Sec. 105, Stock Corporation Law of New York. See also Fletcher's Cyclopedia of the Law of Private Corporations, Permanent Ed., vol. 16, secs. 8113 and 8158. Thus, the petitioner was continued under the law as a corporation for the very purpose of doing those things which it did in 1935 (*Jaffee* v. *Commissioner*, 45 Fed. (2d) 679; *Giovannangeli* v. *Levich & Pollach, Inc.*, 134 Misc. 245; 235 N. Y. S. 28) and, clearly, it comes within the words "any corporation" used in section 351 (b) (1) as those words are commonly understood. Cf. *Will T. Caswell*, 36 B. T. A. 816. Since the words of the act

are clear, we can not change them to relieve this taxpayer, even though we may feel that those words include more than was actually necessary to accomplish the purpose which Congress had in mind. The correction, if any is necessary, should come from Congress.

The petitioner cites the regulations in an effort to show that interest in section 351 means only interest on loans, and reasons that, since its interest on the Langdon notes was not from loans, less than 80 percent of its income was from interest. We disagree with that argument. Interest there means the same as it does in Title I. Sec. 351 (b) (4). The penalty for failure to file a return is mandatory where no return is filed. Sec. 406, Revenue Act of 1935. *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630; *Noteman* v. *Welch*, 108 Fed. (2d) 206.

Reviewed by the Board.

*Decision will be entered under Rule 50.*